CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2017 MAR 14  AM 9: 27

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

OLEVIA LAVERNE GATEWOOD,    )
                           )
        Plaintiff,         )
                           )
v.                         )    CIVIL ACTION NO.
                           )    5:16-CV-060-BQ
                           )    ECF
NANCY A. BERRYHILL,        )
Acting Commissioner of Social Security,  )
                           )
        Defendant.         )

## REPORT AND RECOMMENDATION

Plaintiff Olevia Laverne Gatewood seeks judicial review, under 42 U.S.C. § 405(g), of the Social Security Commissioner's decision denying her applications for disability insurance benefits (DIB) and supplemental security income (SSI). The United States District Judge transferred this case to the undersigned United States Magistrate Judge. Both parties did not consent to proceed before a magistrate judge. The undersigned has considered the parties' arguments, the administrative record, and the applicable law, and in accordance with the order of transfer, files this report and recommends the district court reverse the Commissioner's decision and remand this action for further proceedings.

## I.    Statement of the Case

Gatewood filed applications for DIB and SSI on July 31, 2013, alleging disability beginning March 1, 2013. Her applications were initially denied by the Social Security Administration (SSA) on September 23, 2013, and again upon reconsideration on January 16, 2014. Tr. 21. Gatewood subsequently requested a hearing, and on April 6, 2015, she testified

1

before an administrative law judge (ALJ). Gatewood was not represented by counsel at the hearing; however, the ALJ informed Gatewood of her right to counsel prior to conducting the hearing. Tr. 37. On appeal, Gatewood is represented by counsel.

The ALJ determined on November 27, 2015, that Gatewood was not disabled. Tr. 21–29. The Appeals Council denied review of the ALJ's decision on January 30, 2016. Tr. 1. Following denial of a request for review, the ALJ's decision becomes the Commissioner's final decision and is properly before the court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

After reviewing the administrative record and the arguments of both parties, the court recommends that the District Court reverse the Commissioner's final decision and remand Gatewood's case for further proceedings consistent with this recommendation.

## II.  **Standard of Review**

A court reviewing the Commissioner's denial of disability insurance benefits is limited to determining whether: (1) the decision is supported by substantial evidence in the record, and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2016); *see e.g.*, *Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). A reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgement for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994)

2

(quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). If the Commissioner's findings are supported by substantial evidence, they are treated as conclusive and will be affirmed. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2016). In making a disability determination, the Commissioner conducts a five-step sequential evaluation process to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity (RFC), is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4) (2016); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If a disability determination is made at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If a claimant is found to be not disabled at any step, however, the fact finder must consider the next step. 20 C.F.R. § 404.1520(a); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

At the first four steps in the analysis, the claimant bears the burden of proving her disability by establishing a physical or mental impairment. *Greenspan*, 38 F.3d at 236. Once satisfied, the Commissioner must then demonstrate that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209

3

F.3d 448, 453 (5th Cir. 2000).

### III.    Factual Background

Gatewood claims she became disabled on March 1, 2013, at age fifty-seven due to carpal tunnel syndrome of the right wrist and right scapholunate advanced collapse.[1]  Tr. 23, 27.  She has a high school education, and last worked as a line operator at a newspaper plant.  Tr. 49.  She worked at the newspaper plant on a full-time basis from March 1, 2013—the alleged disability onset date—through April 22, 2014; the ALJ therefore revised the adjudicative period to begin on April 23, 2014.  Tr. 23.  Gatewood lives with her son, daughter, and grandson, and is able to drive, care for herself, prepare basic meals, and perform some household duties such as laundry and vacuuming.  Tr. 56–60.

The ALJ found that Gatewood has severe impairments consisting of the following: right scapholunate advanced collapse, and carpal tunnel syndrome of the right wrist status-post release surgery with continued pain, stiffness, numbness, tingling, and weakness in the right upper extremity.  Tr. 23–24.  The ALJ concluded that Gatewood has the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with certain physical limitations, and she is unable to perform any past relevant work.  Tr. 27.  Relying on the testimony of a vocational expert (VE), the ALJ also concluded that Gatewood has acquired work skills from her past relevant work as a sales clerk, which requires customer service and retail sales skills.  Tr. 27–28.  Based on the testimony of the VE, the ALJ found Gatewood could perform the job of sales clerk, general merchandiser, which exists in significant numbers in the national economy.  Tr. 28.  Accordingly, the ALJ determined

---

[1] Scapholunate advanced collapse is a progressive form of wrist osteoarthritis.  Brian T. Tischler *et al.*, *Scapholunate Advanced Collapse: A Pictorial Review*, U.S. Nat'l Libr. of Med. (June 3, 2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4141341.

4

that Gatewood is not disabled as defined in §§ 404.1520(g) and 416.920(g).  *Id.*

Gatewood contests the ALJ's decision on the following grounds: (1) the ALJ's RFC findings are contradictory; (2) the Appeals Council failed to meaningfully weigh new evidence she submitted; (3) the ALJ failed to adequately develop the record of an unrepresented claimant; and (4) the ALJ's decision is not supported by substantial evidence. Pl.'s Br., at 1 (ECF No. 14). The court finds that Gatewood's fourth point of error has merit, and the case should be remanded on this issue.

## IV.    <u>Discussion</u>

### A.    **The contradiction in the ALJ's RFC finding amounts to a scrivener's error.**

At the outset, the court notes that the seeming contradiction in the ALJ's RFC finding merely constitutes a scrivener's error.  The ALJ found that Gatewood has the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can *frequently*, but not constantly, perform handling with her *right upper extremity*, and she can only *occasionally* perform handling with her *right upper extremity*." Tr. 24 (emphasis added).  On its face, the ALJ's RFC finding appears to be contradictory: he limited Gatewood to both frequent and occasional handling with her right upper extremity.  Gatewood argues that this contradiction requires the court to speculate about the limits the ALJ intended to place on her RFC; consequently, remand is warranted. Pl.'s Br., at 5.  The Commissioner, on the other hand, argues that the contradiction in the ALJ's RFC finding amounts to nothing more than a scrivener's error—a transcription or typographical error. Commissioner's Br., at 5–6; *see U.S. Nat'l Bank of Ore. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 462 (1993).  Considering the record as a whole, the court agrees with the Commissioner.

5

Where the ALJ's intent is apparent, an error or contradiction in a decision may be excused as simply a scrivener's error. *Dukes v. Colvin*, No. 3:14-CV-173-BF, 2015 WL 1442988, at *4 (N.D. Tex. Mar. 31, 2015) (citing *Douglas v. Astrue*, 1:09-1349-CMC-SVH, 2010 WL 3522298, at *3–5 (D. S.C. Sept. 3, 2010)). In cases where the error has no effect on the analysis or the outcome, courts again consider it to be a scrivener's error. *See, e.g.*, *Wills v. Colvin*, No. 1:14-CV-504, 2016 WL 792693, at *6–7 (E.D. Tex. Mar. 1, 2016) (holding that a single mention in ALJ's decision that claimant was able to perform light work, where the ALJ stated later in the opinion that claimant was able to perform medium work, constituted a scrivener's error because other evidence in the opinion indicated ALJ's intent to limit claimant to medium work); *Madison v. Astrue*, No. Civ. Action No. 3:CV-07-364, 2008 WL 2962337, at *6 (M.D. Pa. July 29, 2008) (finding the ALJ's use of the phrase "unable to perform any past relevant work" in the heading of his analysis in step four amounted to a scrivener's error because the ALJ went on to step five and found that claimant could perform other work in the national economy). In contrast, where the error alters the outcome of the ALJ's decision, courts have found that it amounts to more than a mere transcription or typographical error. *See, e.g.*, *Smith v. Colvin*, Civ. Action No. 3:15-CV-2964-BH, 2016 WL 5086073, at *10–11 (N.D. Tex. Sept. 19, 2016) (rejecting Commissioner's argument that ALJ's error constituted a scrivener's error because RFC was inconsistent with the step five determination and evidence in record did not clearly reveal ALJ's intent).

Here, the ALJ posed several hypothetical questions to the VE related to Gatewood's handling and fingering abilities during the hearing on April 6, 2015. In one of the hypotheticals, the ALJ asked the VE the following:

Q        . . . For this first hypothetical, it's going to be frequent but not constant fingering and handling with the dominant right hand. . . . With that could such a person perform any of the past --

A        Yes.  Such a person could perform the work of a sales clerk and also the machine or conveyor feeder operator.

* * *

Q        All right.  If we change [the physical restriction] to *occasional fingering* with the dominant right hand, would that have any effect on the person being able to perform the machine feeder or the sales clerk?

A        Yes.  It would eliminate both of those jobs.

Q        And the only skilled job would be that sales clerk, the semi-skilled job. With that, would there be any transferable skills to any other job?[2]

A        Let me check, Your Honor.

Q        Sure.

A        Your Honor, the skills of the sales clerk, with the occasional fingering, would transfer to that of a sales clerk, general merchandise, in retail.  That is light, SVP of three, and *fingering is occasional*, per the DOT.

Q        Okay.  All right.  And what kind of numbers are we talking about?

A        Just give me one second.

Q        Sure.

A        I would estimate approximately *40,000 jobs in the national economy*.

Tr. 74–75 (emphasis added).  Later, the ALJ explained to Gatewood that the VE testified with a limitation of "occasional fingering, there were transferable skills to a different sales clerk job, of

---

[2] Gatewood testified that she had previously worked as a sales associate at Dillard's department store.  Tr. 51.  The VE testified that this past relevant work constituted light, semi-skilled work. Tr. 73.

sales clerk, general merchandiser, that a person could still perform, and only perform *fingering occasionally*." Tr. 77 (emphasis added).

Taking into account the VE's testimony, the ALJ found that Gatewood "has acquired skills from past relevant work that are transferable to other occupations" and considering her age, education, and RFC, she has the ability to perform the job of a "sales clerk, general merchandiser (for which there are 40,000 jobs in the national economy)." Tr. 28. This finding directly corresponds, in job title and number, to the VE's testimony that a person restricted to frequent, but not constant, handling, and occasional fingering can perform the position of a sales clerk, general merchandise, for which there are 40,000 jobs available. Tr. 74–75. Thus, despite the seemingly inherent contradiction, the hypothetical questions the ALJ posed to the VE, the ALJ's explanation to Gatewood later in the hearing, and the ALJ's citation in his decision to the VE's conclusion that Gatewood could perform the occupation of sale clerk, general merchandise, for which there are 40,000 jobs in the national economy, when read together, make it clear that the ALJ intended to limit Gatewood to frequent but not constant handling and occasional fingering with her dominant right hand.

Accordingly, the court finds that the ALJ's determination that Gatewood "can only occasionally perform handling with her upper right extremity" is a scrivener's error. As discussed below, however, because the court concludes remand is required on Gatewood's fourth point of error, the ALJ should remedy this error upon remand.

**B.      The ALJ's RFC determination is not supported by substantial evidence; therefore, remand is required.**

Having concluded that the ALJ intended to limit Gatewood to light work activity in jobs that would allow for frequent, but not constant, use of the hands, and only occasional fingering,

the court turns to Gatewood's argument that the ALJ's decision is not supported by substantial evidence. Specifically, she asserts the ALJ's RFC determination is not supported by substantial evidence because the ALJ rejected all of the medical opinions in the record. Pl.'s Br., at 7. By rejecting all of the medical opinions, Gatewood argues, the ALJ effectively used his own lay opinion to determine the effect her impairments have on her ability to work, in violation of the Fifth Circuit's holding in *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995). *Id.* at 9. The court agrees.

In *Ripley*, the ALJ determined that the claimant had the RFC to perform sedentary work and was therefore not disabled. 67 F.3d at 557. On appeal, the claimant argued the ALJ's RFC determination was not supported by substantial evidence. *Id.* The Fifth Circuit noted the record contained a large amount of medical evidence establishing the claimant had a back problem, but despite the voluminous amount of medical evidence, the record did not clearly establish the effect the claimant's back problem had on his ability to work. *Id.* Thus, the court remanded the case with instructions that the ALJ obtain medical evidence from the claimant's treating physician regarding the effect the claimant's back condition had on his ability to work. *Id.* at 557–58. The court explained that the ALJ's RFC determination was not supported by substantial evidence because it was unable to determine the effect the claimant's conditions, "no matter how 'small,'" had on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n.27.

Here, just as in *Ripley*, the record contains ample medical evidence showing Gatewood suffers from severe impairments. The record does not contain a medical source opinion, however, supporting the ALJ's finding that Gatewood is able to perform a full range of light work, restricted to frequent, but not constant, use of her hands, and only occasional fingering. Tr. 24, 27.

The ALJ relied on the medical opinion of Desirae McKee, M.D., in making his RFC

determination. Tr. 27. Dr. McKee performed surgery on Gatewood's right hand in April 2014 to treat a right scapholunate ligament tear and carpal tunnel syndrome. On August 14, 2014—four months post-surgery—Dr. McKee completed a medical opinion statement (Medical Opinion) opining about the effect Gatewood's impairments had on her ability to work. *See* Tr. 658–60. In the Medical Opinion, Dr. McKee stated Gatewood did not have the ability to perform repetitively fine finger movements or pushing/pulling movements with her right hand. Tr. 659. Dr. McKee also found work/activity restrictions of "no gripping or grabbing [with] right hand," and Gatewood could only lift/carry up to ten pounds occasionally (1–35%). *Id.* The ALJ assigned "significant weight" to Dr. McKee's Medical Opinion, but only to the extent it supported his RFC determination. Tr. 27. The problem with this approach is that Dr. McKee's opinions do not support the ALJ's RFC determination (frequent but not constant handling and occasional fingering with right hand), and for the most part seem to contradict it. In discounting Dr. McKee's opinion and conclusions, and not citing any other opinion testimony in the record supporting his RFC determination, the court can only conclude the ALJ made an independent RFC finding with no medical opinion evidence supporting it. While it is within the ALJ's discretion to reject a medical source opinion, he must nevertheless rely on medical evidence to support his RFC determination— not the other way around. *See, e.g.*, *Shugart v. Astrue*, Civ. Action No. 3:12–CV–01705–BK, 2013 WL 991252, at *5–6 (N.D. Tex. Mar. 13, 2013) ("Thus, assuming *arguendo,* that the ALJ was entitled to disregard Dr. Thompson's and Dr. Ludden's opinions, there is no evidence whatsoever supporting the ALJ's RFC finding at step three that Plaintiff can perform simple, unskilled work.").

Other than Dr. McKee's Medical Opinion (to which the ALJ did not assign meaningful weight), the record does not contain another medical opinion or other medical evidence describing

the effect Gatewood's impairments have on her ability to work, or the ALJ's specific RFC determination. The ALJ did not assign any weight to the state agency medical consultants' opinions. Tr. 27. The ALJ also found that Gatewood's own testimony regarding her impairments and her ability to work was "not entirely credible." Tr. 25, 27.

Having declined to rely on Dr. McKee's Medical Opinion, the state agency medical consultants' opinions, and Gatewood's testimony regarding her abilities, the ALJ should have obtained a medical source opinion about the types of tasks Gatewood can perform despite her impairments. *See Thornhill v. Colvin*, No. 3:14-CV-335-M, 2015 WL 232844, at *10 (N.D. Tex. Jan. 16, 2015) (citing *Ripley*, 67 F.3d at 557); *see also Shugart*, 2013 WL 991252, at *5 (citing *Ripley*, 67 F.3d at 557) ("Instead, at that point, it became incumbent upon the ALJ to obtain an expert medical opinion about the types of work activities that Plaintiff could still perform given her impairments."). Instead, the ALJ improperly made an independent RFC finding. In his decision, the ALJ cited to various treatment notes in support of his conclusion that his RFC determination was "very generous, particularly given [Gatewood] has responded well to treatment." Tr. 27. But "[t]he problem with the ALJ's RFC determination is . . . that the ALJ rejected any medical opinion addressing or touching on Plaintiff's condition's effect on her ability to work and relied on progress notes that do not themselves address Plaintiff's work limitations." *Thornhill*, 2015 WL 232844, at *10. "While the ALJ may choose to reject medical sources' opinions, he cannot then independently decide the effects of Plaintiff's [physical] impairments on her ability to perform work-related activities, as that is prohibited by *Ripley*, 67 F.3d at 557–58, even if the ALJ believes he is simply giving Plaintiff the benefit of the doubt as to what limitations might apply." *Id.*; *see Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) ("In *Ripley*,

11

we held that an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions.").

Although the lack of a medical source statement describing the types of work a claimant can perform despite her impairments may not, by itself, render the record incomplete, the record must contain substantial evidence to support the ALJ's determination. *Ripley*, 67 F.3d at 557. In this case, the ALJ's conclusion is not supported by substantial evidence because the treatment notes and other medical documents in the record do not clearly establish the effect Gatewood's condition has on her ability to work. *Id.* Rather, the ALJ relied on treatment notes that wholly fail to address Gatewood's ability to perform work-related activities. *See, e.g.*, Tr. 401 (In May 2014, Gatewood reported "lots of pain and right elbow popping," but no documentation of her ability to work.); Tr. 405 (In June 2014, same.); Tr. 528–30 (In July 2014, resident physician noted Gatewood's pain was improving, but did not evaluate how her impairments affected her ability to work.); Tr. 502–04 (In December 2014, Gatewood's pain had improved, but the physician did not document how her continued "stiffness and swelling" would affect her ability to work.); Tr. 476 (In April 2015, same.); Tr. 469–70 (In May 2015, physician noted Gatewood was cleared to use her right "hand *as able* without restriction," but physician did not evaluate how Gatewood's "persistent mild edema," as well as her "painful crepitus" and "persistent numbness" in right thumb would affect her ability to work.) (emphasis added); Tr. 453–55 (In July 2015, Gatewood reported "dropping things and cutting self when using a knife," and physician noted that her carpal tunnel symptoms had returned and her condition was worsening. Physician did not document whether,

12

or if, Gatewood was able to work, or the impact her symptoms would have on her ability to work.). Without evidence in the record (other than Dr. McKee's Medical Opinion, which the ALJ purportedly used to support his independent and unfounded RFC finding) opining to the effects Gatewood's impairments have on her ability to work, the court cannot conclude that substantial evidence supports the ALJ's RFC finding. *See Ripley*, 67 F.3d at 557 n.27; *see also Geason v. Colvin*, No. 3:14–CV–1353–N, 2015 WL 5013877, at *5 (N.D. Tex. July 20, 2015) ("Because the ALJ erred in making an RFC determination without medical evidence addressing the effect of Plaintiff's impairment on her ability to work, the ALJ's decision is not supported by substantial evidence."); *Thornhill*, 2015 WL 232844, at *10 (concluding that substantial evidence did not support the ALJ's RFC finding because the court could not, based on the record, determine the effects plaintiff's impairments had on her ability to work).

Nevertheless, reversal is only warranted if the claimant demonstrates that she was prejudiced by the ALJ's error. "To establish prejudice, a claimant must show that she 'could and would have adduced evidence that might have altered the result.'" *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). Here, after declining to give meaningful weight to Dr. McKee's Medical Opinion, the ALJ should have obtained a medical source statement from Gatewood's examining or treating physician to determine the effects Gatewood's impairments have on her ability to work.

Because the record lacks medical source evidence regarding the effect of Gatewood's impairments on her ability to work, and because the remainder of the evidence in the record does not provide substantial support for the ALJ's RFC finding, remand is required.

13

## V.    Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court reverse and remand the final decision of the Commissioner.

## VI.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: March **14** 2017

_____

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**